**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VLADIMIR JEANTY,

           Plaintiff,       6:22-cv-319 (BKS/TWD)

v.

MELISSA SCIORTINO, Utica City Clerk/Records Access
Officer, WILLIAM BORRILL, ESQ., Corporation
Counsel, ZACHARY OREN, ESQ., First Assistant
Corporation Counsel, DAVID BAGLEY, ESQ., CITY OF
UTICA, CHARLES N. BROWN, ESQ., Asst. Corp.
Counsel, SGT. ANTHONY MARTINO, SGT. EDIN
SELIMOVIC, JOHN/JANE DOE ONE, and JOHN/JANE
DOE TWO, in their individual and official capacities as
employees of the City of Utica,

           Defendants.

**Appearances:**

*Plaintiff pro se:*
Vladimir Jeanty
Arverne, NY 11692

*For Defendants City of Utica, Brown, Martino, Selimovic, Sciortino, Borrill, and Oren:*
David A. Longeretta
Assistant Corporation Counsel
One Kennedy Plaza
Utica, NY 13502

*For Defendant Bagley:*
Laura L. Spring
Cohen Compagni Beckman Appler & Knoll, PLLC
507 Plum Street, Suite 310
Syracuse, NY 13204

Hon. Brenda K. Sannes, Chief United States District Judge:

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

Pro se plaintiff Vladimir Jeanty brings this action against Defendants under 42 U.S.C.

§ 1983 for violations of the First and Fourteenth Amendments arising out of Defendants' alleged

failure to provide photographs sought in a New York Freedom of Information Law ("FOIL")

request made by Plaintiff. (*See generally* Dkt. No. 32 (amended complaint)).[1] Presently before

the Court are two motions to dismiss the amended complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) filed by (1) Defendants City of Utica, Charles Brown, Anthony Martino,

Edin Selimovic, Melissa Sciortino, William Borrill, and Zachary Oren (the "City Defendants"),

(Dkt. No. 56), and (2) Defendant David Bagley, (Dkt. No. 50). Plaintiff opposed both motions,

(Dkt. No. 61), and all Defendants replied in support of their respective motions, (Dkt. Nos. 67,

68). For the following reasons, the Court grants the City Defendants' motion to dismiss and

grants in part and denies in part Bagley's motion to dismiss.

## II.    FACTS[2]

### A.     The First FOIL Request for the Photographs

In 2009 or 2010, Plaintiff filed a FOIL request with the City of Utica Clerk's Office for

"files and Metadata" needed to "defend himself in a criminal matter initiated by [Utica Police

Department ("UPD")] officers." (Dkt. No. 32, ¶¶ 10, 13; *see also* Dkt. No. 61, at 9 (alleging that

---

[1] Plaintiff amended his complaint once as a matter of course in response to Defendants' motions to dismiss the original complaint. (*See* Dkt. Nos. 29, 30). Defendants subsequently withdrew those motions to dismiss. (Dkt. Nos. 35–38).

[2] The facts are drawn from the amended complaint, as well as Plaintiff's opposition to Defendants' motions to dismiss, to the extent that submission is "consistent with the allegations in the complaint." *Crum v. Dodrill*, 562 F. Supp. 2d 366, 373–74 & n.13 (N.D.N.Y. 2008) (noting that "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum," to the extent those materials "are consistent with the allegations in the complaint" (citations omitted)); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Plaintiff filed a FOIL request on March 3, 2010 for photographs and metadata taken on October 15, 2009 in connection with Plaintiff's arrest)). Plaintiff asserts that the request was "ignored and not responded to in the prescribe[d] time period." (Dkt. No. 61, at 9). After Plaintiff filed an Article 78 petition, Defendant Charles Brown, First Assistant Corporation Counsel for the City of Utica, provided Plaintiff with black and white paper copies of the photographs. (*Id.* at 10; Dkt. No. 32, ¶ 8). After Plaintiff filed a second Article 78 petition, Brown was ordered to produce "2 CDs with 22 photographs." (Dkt. No. 32, ¶ 11). Brown "instructed" Defendant Sergeant Anthony Martino "to alter the Metadata . . . and to change the file names" and provided Plaintiff with "2 CDs with 22 photographs on them" in early 2012. (*Id.* ¶¶ 11–12; Dkt. No. 61, at 10).

### B. The 2016 Action

In 2016, Plaintiff filed a lawsuit in the Northern District of New York against "multiple City of Utica employees" arising out of his October 2009 arrest (the "2016 Action"). (Dkt. No. 32, ¶ 15); *see Jeanty v. City of Utica*, No. 16-cv-966 (N.D.N.Y. Aug. 3, 2016).[3] The "majority" of Plaintiff's claims in the 2016 Action were dismissed at summary judgment. (Dkt. No. 32, ¶ 16). One claim for denial of a fair trial against defendant Michael Cerminaro proceeded to trial, and the jury returned a verdict in favor of Cerminaro. (*Id.* ¶¶ 17–19). Defendant Zachary Oren, First Assistant Corporation Counsel for the City of Utica, represented City defendants in the 2016 Action, and Defendant David Bagley, a private attorney, was hired by the City of Utica to represent defendant Sean Dougherty. (*Id.* ¶¶ 6–7, 33).

---

[3] The Court, which presided over the 2016 Action, takes judicial notice of the fact of that lawsuit and of the documents filed therein. A court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted). Furthermore, there "seems to be no doubt as to the power of the court to take judicial notice of its own records in the same or in an interrelated case." *Rosado-Acha v. Red Bull GmbH*, No. 15-cv-7620, 2016 WL 3636672, at *7, 2016 U.S. Dist. LEXIS 84543, at *19 (S.D.N.Y. June 29, 2016) (citation omitted).

Plaintiff alleges that Bagley, Oren, and the City of Utica "entered into a Joint Defense Agreement" which "required Bagley to represent Dougherty and [e]nsure that Dougherty provided evidence [and] testimony that would assist the other UPD defendants." (*Id.* ¶ 34). The Joint Defense Agreement also required Bagley to "make sure Dougherty did not testify truthfully about the circumstances regarding the taking of photographs on 10/15/2009 involving [Plaintiff's] arrest" or regarding "how many photographs were taken and when they were uploaded in the UPD [Records Management System ("RMS")]." (*Id.* ¶¶ 35–36). The agreement further required that Bagley not "divulge" to Plaintiff or the Court "how the photographs" provided to Plaintiff during discovery were modified. (*Id.* ¶ 37).

Oren and Bagley provided Plaintiff with a CD containing 22 photographs and "modified" metadata in 2018 and again in 2020. (*Id.* ¶¶ 38–39). Defendant Lieutenant Edin Selimovic prepared these CDs and was "instructed" by Oren and Bagley to "change the file names." (*Id.* ¶¶ 40–41). Selimovic prepared an affidavit containing a false statement that the photographs had not been modified by him in any way. (*Id.* ¶ 85). Plaintiff generally alleges that Brown, Oren, and Bagley "had the 22 photographs['] Metadata modified to deprive [Plaintiff] of the evidence he needed to defend himself in the criminal matter and to prove his allegations in the [2016 Action]." (*Id.* ¶ 46).

**C.    October 2019 FOIL Request**

Plaintiff filed a FOIL request with Defendant City of Utica Records Access Officer Melissa Sciortino on October 29, 2019 and amended the request on October 30, 2019. (Dkt. No. 61, at 8). Oren submitted a letter request in the 2016 Action requesting a protective order relieving all City of Utica officials of their duties to respond to the request. (*Id.*). Plaintiff filed an Article 78 petition in state court on January 29, 2020 to challenge the failure to respond to this FOIL request. (*Id.*).

### D.       March 2020 FOIL Request for the Photographs

Plaintiff filed another FOIL request with the City of Utica Clerk's Office on March 11,

2020, in which he requested:

> All photographs stored in UPD RMS system from the time period
> of October 10 2009 to October 15, 2015 (specifically and including
> photographs entered by PO Cerminaro, Paladino, Dougherty and
> Uryniak). Please provide these in color on a Compact Disk WITH
> METADATA ATTACHED.

(Dkt. No. 32, ¶ 20). Sciortino responded the same day, stating that Plaintiff's request was being

reviewed and that she anticipated Plaintiff would be contacted regarding the request by April 8,

2020. (*Id.* ¶ 21). Plaintiff did not receive another response from Sciortino, even after he wrote her

about his request. (*Id.* ¶¶ 22–23). On April 20, 2020, Plaintiff wrote Defendant William Borrill,

City of Utica Corporation Counsel and Records Access Appeals Officer, regarding his request.

(*Id.* ¶ 24).[4] Borrill responded on May 1 and indicated that the "City of Utica will not be able to

respond to your purported FOIL request absent judicial intervention." (*Id.*; *see* Dkt. No. 61, at 9

("The City of Utica will not be complicit in your scheme to subvert lawful Orders of a United

States District Court.")). Plaintiff filed an Article 78 petition in state court on May 21, 2020 to

challenge this response to his FOIL request. (Dkt. No. 61, at 9).

Plaintiff alleges that Sciortino "never responded or communicated" with Plaintiff

regarding his FOIL request between March 11, 2020 and approximately October 1, 2021, despite

her awareness that New York Public Officers Law required her to respond to the request within

30 days. (Dkt. No. 32, ¶¶ 25–26; *see id.* ¶ 48 (alleging that Oren, Borrill, and Bagley "informed

Sciortino that she was not to respond to [Plaintiff's] specific request relating to photographs in

the possession of the Utica Police Dep[artment]")). He further alleges that Sciortino "was told,

---

[4] Plaintiff contradictorily alleges that Borrill both was and was not the Records Access Appeals Officer. (*Id.* ¶¶ 5, 32).

informed and convinced by Oren, Borrill and Bagley not to respond to [Plaintiff's] FOIL requests that related directly to" the 2016 Action, (*id.* ¶ 29), and that Sciortino "agreed" not to provide the requested records, (*id.* ¶¶ 51–52). Plaintiff alleges that Sciortino is withholding the requested records "solely because she did not want [Plaintiff] [to] use these photographs in the federal litigation and to succeed in His Federal lawsuit." (*Id.* ¶ 56; *see id.* ¶ 57 (alleging that Sciortino is withholding the records "to assist Oren and Bagley in defending their clients[,] all of [whom] are City of Utica employees and friends of [D]efendants")). Plaintiff alleges that, if Sciortino had produced the photographs requested in his March 2020 FOIL request, his claims in the 2016 Action "would not have been dismissed at summary judgment or after trial." (*Id.* ¶¶ 60–64).

Plaintiff alleges that "John Roe submitted a FOIL request in 2019 and 2020 requesting photographs from the UPS RMS system" and his request was "complied with in accordance [with] FOIL requirements." (*Id.* ¶ 65). Similarly, "Jane Roe submitted a FOIL request in 2019 and 2020 requesting . . . photographs from the UPS RMS system" and this request was "complied with." (*Id.* ¶ 66). A woman named Latisha Bradford requested "records pursuant to FOIL in 2020" and this request was also "complied with." (*Id.* ¶ 67). Plaintiff alleges that he "is the only African/black person who has submitted a FOIL request and was denied because of His race/ethnicity and that he had a Federal Lawsuit against City of Utica employees (police officers) and friends of the [D]efendants." (*Id.* ¶ 68; *see id.* ¶¶ 78–79 (alleging that he was "treated differently" than "all other white, non-immigrant persons filing FOIL requests" and than "all other white, non-immigrant persons filing FOIL requests who were not suing City of Utica

employees or friends of defendants")).[5] Plaintiff has not filed any new FOIL requests with the City of Utica because he "fears and knows that they will not be complied with." (*Id.* ¶ 82).

In his opposition to the motions to dismiss, Plaintiff alleges an additional comparator: George Kuchma, "a white male," who sued the City of Utica and one of its officers for excessive force. (Dkt. No. 61, at 20). Plaintiff asserts that Mr. Kuchma filed a FOIL request for police photographs of his injuries, and that the City "complied with FOIL and provided Mr. Kuchma the photographs he requested despite the ongoing lawsuit he had at the time." (*Id.*).[6]

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a court "is ordinarily obligated to afford a special solicitude to *pro se* litigants," the "appropriate degree of special solicitude is not identical with regard to all *pro se* litigants."

---

[5] Plaintiff also refers to his immigration status, without providing additional details.

[6] Plaintiff also attached to his opposition copies of seven FOIL requests filed with the City of Utica by other individuals. (Dkt. No. 61-1). Defendants argue that the Court should not consider these newly submitted documents. (Dkt. No. 67, at 6–7; Dkt. No. 68, at 8). Even if the Court were to consider these materials, which were not submitted with the amended complaint, these documents contain no indication of the requesters' protected characteristics, if any, or the disposition of the requests.

*Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010). The "degree of solicitude may be lessened," for example, where a particular pro se litigant is "experienced in litigation and familiar with the procedural setting presented." *Id.* A court may exercise its discretion, "based on the totality of the relevant circumstances," to determine "what degree of solicitude, if any, should be afforded." *Id.* at 102–03. Here, Plaintiff has litigated issues arising out of his 2009 arrest extensively and thoroughly in fully briefed memoranda, which are comparable to submissions from skilled counsel, in the 2016 Action, in FOIL litigation in this Court, in the Second Circuit appeal of the 2016 Action, in a motion for relief from judgment in the 2016 Action, and in the present action. While this weighs in favor of granting Plaintiff less solicitude than an ordinary pro se litigant, in an abundance of caution the Court has afforded Plaintiff solicitude by considering the assertions in his opposition and by giving him a limited opportunity to amend the complaint. However, given Plaintiff's adeptness in litigation, the Court expects him to comply with the Federal Rules of Civil Procedure and this Court's Local Rules in all submissions in this action.

## IV.   DISCUSSION

Plaintiff's amended complaint contains three causes of action: (1) violation of Plaintiff's Fourteenth Amendment Equal Protection rights, (2) a claim for First Amendment denial of access to courts and retaliation, and (3) fraud on the court. (Dkt. No. 32, at 13–16).[7] In his opposition, Plaintiff stipulates to the dismissal of Defendant Selimovic and of his fraud on the court claim. (Dkt. No. 61, at 7). Plaintiff's opposition also references a claim for conspiracy under 42 U.S.C. §§ 1983, 1985, (*id.* at 20–22), which the Court considers below. The City

---

[7] The amended complaint also refers to "Section Twelve, Article One of the New York State Constitution," (Dkt. No. 32, at 1), which protects "[s]ecurity against unreasonable searches, seizures and interceptions," N.Y. Const., art. I, § 12. As Plaintiff's factual allegations do not appear to implicate this provision, the Court does not address it further.

Defendants and Bagley each move to dismiss the amended complaint in its entirety. (*See generally* Dkt. Nos. 50-1, 56-1).

### A.     City Defendants' Motion to Dismiss

#### 1.     Absolute Immunity

The City Defendants first argue that all of Plaintiff's claims against them are barred by the doctrine of absolute immunity because the actions underlying Plaintiff's claims were "advocacy functions." (Dkt. No. 56-1, at 7–11). Plaintiff responds that the City Defendants are not entitled to absolute immunity because they were acting "in an administrative role," not as advocates. (Dkt. No. 61, at 22–25).

Absolute immunity from suit "gives 'public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities.'" *Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006) (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)). A defendant bears the burden of showing that absolute immunity "is warranted for the function in question" which gives rise to the plaintiff's claim. *Id.* "Immunity may be asserted as a defense in a 12(b)(6) motion where 'the facts supporting the defense appear on the face of the complaint.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021) (quoting *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004)) (brackets omitted). The court must draw all reasonable inferences in favor of the plaintiff, including those "that defeat the immunity defense." *Id.* (quoting *McKenna*, 386 F.3d at 436).

Absolute immunity protects government officials from suit arising out of acts associated with their "function as an advocate." *Id.* In determining whether an official is entitled to absolute immunity, courts employ a "functional" approach, "looking at 'the nature of the function performed, not the identity of the actor who performed it.'" *Mangiafico*, 471 F.3d at 394 (citation omitted). Absolute immunity extends to "government attorneys defending civil suits" and

9

"government attorneys who initiate civil suits." *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992) (citations omitted). The principle applies to "functions of a government attorney 'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits—including the defense of such actions." *Mangiafico*, 471 F.3d at 396 (quoting *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986)). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985)).

### a.      Defendants Martino and Brown

The City Defendants argue that Sergeant Martino and Brown, First Assistant Corporation Counsel, are entitled to absolute immunity with regard to claims arising out of the allegations that they modified metadata when producing two CDs of the 22 photographs in response to a court order. (Dkt. No. 56-1, at 10–11). Specifically, the City Defendants argue that such actions "would be associated with advocacy in the FOIL Article 78 proceeding and not part of any kind of investigation." (*Id.*). Plaintiff does not address absolute immunity as it relates to Martino and Brown.

Accepting the amended complaint's factual allegations as true, the Court concludes that Martino and Brown have not demonstrated their entitlement to absolute immunity at this juncture. Plaintiff alleges that Brown "instructed Martino" to alter the metadata associated with the photographs and produced two CDs containing the photographs after being "ordered by a NYS Court." (Dkt. No. 32, ¶¶ 11–12). While Plaintiff's amended complaint and opposition reference an Article 78 proceeding relating to that FOIL request and a "criminal matter," (*id.* ¶ 13; Dkt. No. 61, at 10), the facts as alleged do not indicate that Brown or Martino had any

involvement in that Article 78 proceeding or criminal matter, much less that they were performing functions as advocates for the City of Utica. Drawing all reasonable inferences in Plaintiff's favor, the amended complaint simply indicates that Brown and Martino produced the photographs at issue in response to a state-court order. While the City Defendants argue that Brown's and Martino's actions were "not part of any kind of investigation," (Dkt. No. 56-1, at 10), that does not necessarily mean the actions were taken in an advocative capacity. *See Mangiafico*, 471 F.3d at 396 (distinguishing between advocative functions—for which a government attorney may be entitled to absolute immunity—and "administrative or investigative" functions—for which a government attorney is entitled only to qualified immunity).

Thus, the Court denies Brown and Martino's request for absolute immunity at this stage.

### b.   Defendants Borrill, Oren, and Sciortino

The City Defendants argue that Borrill, Corporation Counsel, and Oren, First Assistant Corporation Counsel, are entitled to absolute immunity because "the processing of [Plaintiff's] FOIL request, its subsequent Article 78 litigation[,] and the defense of the [2016 Action]" are "all actions concerning advocacy." (Dkt. No. 56-1, at 9–10). They further argue that Sciortino, the Records Access Officer, is entitled to absolute immunity because she simply "processed the FOIL request, as directed by Defendant Borrill." (*Id.* at 10). Plaintiff responds that the conduct he challenges relates to Borrill's and Oren's roles in the "administrative process of FOIL, not during any advocative function," and that Borrill and Oren "had no authority to become involved in the FOIL administrative process." (Dkt. No. 61, at 22–25).

As an initial matter, to the extent Plaintiff intends to assert a claim for conspiracy based on Oren's entering into a "Joint Defense Agreement" with the City of Utica and Bagley, such a claim against Oren would be barred by absolute immunity. Such conduct, which Plaintiff alleges

required Bagley to "make sure Dougherty did not testify truthfully" in the 2016 Action, (Dkt.
No. 32, ¶¶ 34–37), is clearly related to Oren's defense of the 2016 Action and his role as
advocate. *Cf. Gugliara v. N.Y. City Human Res. Ctr.*, No. 08-cv-909, 2008 WL 11471011, at *2,
2008 U.S. Dist. LEXIS 134111, at *5 (E.D.N.Y. Mar. 28, 2008) (holding that absolute immunity
barred suit for damages against government employees who allegedly "act[ed] improperly during
the defense of their clients during a civil suit that Plaintiff initiated"); *Buari*, 530 F. Supp. 3d at
378–79 (noting that absolute immunity has been extended to the falsification of evidence, the
knowing use of perjured testimony, and the "deliberate withholding of exculpatory information"
(citations omitted)).

With regard to Plaintiff's claims arising out of the failure to respond to his March 2020
FOIL request, Plaintiff alleges that Borrill, Corporation Counsel for the City of Utica, responded
to the FOIL request by stating: "The City of Utica will not be complicit in your scheme to
subvert lawful Orders of a United States District Court. Accordingly, the City of Utica will not
be able to respond to your purported FOIL request absent judicial intervention." (Dkt. No. 61, at
9; Dkt. No. 32, ¶ 24).[8]

Plaintiff further alleges that Borrill, Oren, and Bagley told Sciortino not to respond to
Plaintiff's FOIL request for photographs. (Dkt. No. 32, ¶¶ 29, 48). Plaintiff acknowledges in his
opposition that he filed an Article 78 petition on May 21, 2020 to challenge the response to his
March 2020 FOIL request. (Dkt. No. 61, at 9).[9] Taking all of these allegations as true, the Court

---

[8] At the time of Plaintiff's March 2020 FOIL request, the discovery deadline in the 2016 Action had terminated. *See
Jeanty*, No. 16-cv-966, Dkt. No. 247 (Text Order directing that discovery be completed by October 29, 2019). First
Assistant Corporation Counsel for the City of Utica Oren argued in the 2016 Action that Plaintiff was not entitled to
obtain by FOIL discovery that he had been denied by this Court in civil discovery. *Id.*, Dkt. No. 253, at 2.

[9] The Utica Respondents in the Article 78 Proceeding removed that action to this Court asserting that Plaintiff sought
to obtain records in FOIL that this Court found were not subject to discovery in the 2016 Action. *See generally Jeanty
v. Utica Police Dep't*, Nos. 20-cv-221, 20-cv-756, 2021 WL 1055153, 2021 U.S. Dist. LEXIS 51977 (N.D.N.Y. Mar.
19, 2021).

concludes that Borrill and Oren are entitled to absolute immunity for any claims arising out of the conduct alleged. It is clear that Borrill and Oren took the alleged actions in their role as advocates for the City and City defendants in the 2016 Action, as Borrill's response expressly references orders of this Court. Although Plaintiff argues that "there was no ongoing legal/court proceeding relating to or regarding the 3/11/2020 FOIL request" between "10/30/2019 and 5/21/2020," (*id.*), this ignores the fact that both the 2016 Action and an Article 78 proceeding relating to the October 2019 FOIL request were pending. Because Borrill and Oren's complained-of actions were taken in an advocative capacity relating to the pending litigation, they are entitled to absolute immunity from suit for claims arising from those actions, and whether or not the litigation specifically concerned or arose out of the March 2020 FOIL request is not determinative. *See Mangiafico*, 471 F.3d at 396 (noting that absolute immunity applies to functions "that can fairly be characterized as closely associated with the conduct of litigation or potential litigation"). As Plaintiff's amended complaint makes clear, the photographs requested in his March 2020 FOIL are plainly related to the 2016 Action.

Plaintiff's argument that Borrill and Oren are not entitled to absolute immunity because they "had no authority to become involved in the FOIL administrative process" and therefore acted in no "legal role," (Dkt. No. 61, at 24), is not compelling. As the City Defendants respond, it is "squarely" within the authority of Corporation Counsel to draft legal correspondence and advise Sciortino regarding a FOIL request, given the "current litigati[on] against the City by Plaintiff and the threat of more litigation against the City by Plaintiff." (Dkt. No. 67, at 8–9).

Finally, the Court concludes that, because Borrill and Oren are entitled to absolute immunity, Sciortino is as well. Absolute immunity "extends to persons assisting and working under the direction of" government attorneys entitled to absolute immunity, "when they perform

functions closely tied to the judicial process." *Buari*, 530 F. Supp. 3d at 382 (citation omitted); *see also Bernard*, 356 F.3d at 502 (noting that absolute immunity extends to prosecutors "and persons working under their direction"). Plaintiff alleges that Borrill and Oren "informed" and "convinced" Sciortino not to respond to his March 2020 FOIL request. Thus, because Sciortino acted at the direction of government attorneys performing functions closely tied to the judicial process who are entitled to absolute immunity, Plaintiff's claims against Sciortino are barred as well.

### 2.    Claims Against Brown and Martino

The City Defendants argue that all claims against Brown and Martino should be dismissed as untimely because the only actions Plaintiff alleges these two Defendants took occurred in 2009. (Dkt. No. 56-1, at 24–25).[10] Plaintiff argues in response that Defendants' fraudulent conduct equitably tolled the statute of limitations. (Dkt. No. 61, at 18–19). The City Defendants reply that Plaintiff cannot demonstrate that he is entitled to equitable tolling of the statute of limitations because he has not been diligent in pursuing his rights and because no extraordinary circumstances prevented him from filing suit. (Dkt. No. 67, at 5–6).

Generally, a litigant seeking equitable tolling of a limitations period "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is appropriate in "rare and exceptional circumstance[s]," and a district court's decision to deny equitable tolling is reviewed for abuse of discretion. *Zerilli-Endelglass v. N.Y. City Transit*

---

[10] While the amended complaint's allegations regarding Brown and Martino are in connection with a 2009 FOIL request, (*see* Dkt. No. 32, ¶ 10), Plaintiff's opposition states that Brown provided the records at issue "in early 2012," (Dkt. No. 61, at 10).

*Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003) (citations omitted). A court may "evaluate whether a statute of limitations may be equitably tolled" on a motion to dismiss "where the factual basis for equitable tolling is apparent from the face of the complaint and other documents properly considered on a motion to dismiss." *In re Bibox Grp. Holdings Ltd. Secs. Litig.*, 534 F. Supp. 3d 326, 338 (S.D.N.Y. 2021) (citations omitted).

Here, the Court concludes that Plaintiff has not demonstrated that he is entitled to equitable tolling of the statute of limitations applicable to his claims against Brown and Martino, because he has not shown either that he had been pursuing his rights diligently or that any extraordinary circumstance stood in his way of filing a lawsuit against them. Plaintiff argues generally that the allegedly fraudulent conduct of Bagley, Oren, and Selimovic "conceal[ed]" Brown and Martino's conduct from him. (Dkt. No. 61, at 18). However, Plaintiff also states that the earliest he became aware that Brown and Martino had provided him with "modified metadata and changed filenames" was "approximately 2018 when Defendants Oren and Bagley provided [Plaintiff] with 2 more CD's with the 22 photographs and modified Metadata and changed filenames." (*Id.* at 10).[11] Plaintiff states that he "made multiple attempts of exposing the fraudulent conduct" of Brown and Martino, (*id.* at 18), but does not explain what prevented him from filing a lawsuit against Brown and Martino between 2018 and April 5, 2022, the date this action was filed.

Thus, Plaintiff has not advanced any allegations that suggest this is an exceptional circumstance where the statute of limitations should be equitably tolled, and all of his claims against Brown and Martino are dismissed as barred by the three-year statute of limitations. *See*

---

[11] The Court notes that, in a sworn affidavit submitted in support of a Rule 60 motion for relief from the judgment in the 2016 Action, Plaintiff asserted that he has "continuously requested . . . copies of all the photographs and Metadata" at issue "[f]or years dating back to 2010" and that in 2013 he examined the CDs provided in response to his initial FOIL request "to try to determine how the files were 'modified.'" *Jeanty*, No. 16-cv-966, Dkt. No. 484-4, ¶¶ 2, 10.

*Lucente v. County of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) ("The statute of limitations for § 1983 actions arising in New York is three years."); *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001) (statute of limitations for Section 1985 claims is three years).

### 3.       Claims Against City of Utica and Official Capacity Claims

The City Defendants move to dismiss the City of Utica as a Defendant because the amended complaint does not plead any causes of action against the City or "state any viable *Monell* theories of liability." (Dkt. No. 56-1, at 24). Plaintiff responds that the City of Utica may be named as a Defendant because the named individual Defendants "can be sued in their official capacities." (Dkt. No. 61, at 26–27).

A Section 1983 claim against a municipality, such as the City of Utica, or against an official sued in his or her capacity "cannot be sustained unless the plaintiff shows that the violation of h[is] federal rights was the result of a municipal custom or policy." *Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir. 2012) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Here, Plaintiff has not alleged any facts suggesting that any alleged violation of his constitutional rights was the result of a municipal custom or policy. Thus, Plaintiff's official capacity claims and claims against the City of Utica must be dismissed. Having dismissed all claims against the City Defendants, the Court does not reach their remaining arguments for dismissal.

### B.       Bagley's Motion to Dismiss

### 1.       Color of State Law

Bagley first argues that he cannot be liable under Section 1983 because he is not a state actor, but rather a private attorney who was retained by the City of Utica to represent Sean

Dougherty in the 2016 Action. (Dkt. No. 50-1, at 11–14).[12] Plaintiff responds that Bagley was acting under color of state law because he, along with Borrill and Oren, "direct[ed]" Sciortino "to retaliate against Plaintiff by not providing records responsive to" his FOIL requests. (Dkt. No. 61, at 19–20).

It is well-settled that a plaintiff alleging a violation of his constitutional rights under Section 1983 must show that the defendant acted under color of state law. *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012); *see also* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). While private parties generally are not state actors, their conduct can be attributed to the state for Section 1983 purposes if "(1) the State compelled the conduct [the "compulsion test"], (2) there is a sufficiently close nexus between the State and the private conduct [the "joint action test" or "close nexus test"], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the state [the "public function test"]." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).[13] The "fundamental question" for each test is whether the private party's conduct is "fairly attributable" to the state such that it bears responsibility. *Fabrikant*, 691 F.3d at 207.

As Plaintiff appears to concede, the mere fact that Bagley was retained by the City of Utica to represent a police officer defendant in the 2016 Action does not convert him into a state

---

[12] Bagley also argues that he has no official capacity in which to be sued. (Dkt. No. 50-1, at 12; *see* Dkt. No. 32, ¶ 7 (purporting to sue Bagley "in his individual and official capacities")). The Court agrees. Bagley, as a private attorney, has no official capacity, and any official capacities claims asserted against him are therefore dismissed.

[13] A close nexus may also be found where the private actor conspired with a state official to violate the plaintiff's constitutional rights. *See Harrison v. New York*, 95 F. Supp. 3d 293, 322 (E.D.N.Y. 2015). While the "concepts of acting 'jointly' or 'in conspiracy with' state actors are intertwined," *id.* (citation omitted), as discussed below, *infra* Section IV.B.4, Plaintiff's claims of conspiracy are too conclusory.

actor who may be held liable under Section 1983. (Dkt. No. 61, at 19 ("Bagley cannot be sued for His representation of PO Sean Dougherty.")); *cf. Shaw v. Rondout Valley Centr. Sch. Dist.*, No. 15-cv-215, 2015 WL 8492487, at *7, 2015 U.S. Dist. LEXIS 165415, at *20–21 (N.D.N.Y. Dec. 10, 2015) ("Defendant Lambert's position as an attorney in private practice who was retained by the School District does not make him a state actor for purposes of section 1983." (collecting cases)) Thus, for Bagley's conduct to be state action, it would have to satisfy one of the three tests making his actions "fairly attributable" to the state.

"When analyzing allegations of state action, the Court must begin 'by identifying the specific conduct of which the plaintiff complains.'" *Anilao v. Spota*, 774 F. Supp. 2d 457, 499 (E.D.N.Y. 2011) (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)). Here, the alleged conduct of Bagley underlying Plaintiff's Fourteenth and First Amendment claims is that Oren, Borrill, and Bagley "told, informed and convinced" Sciortino not to respond to Plaintiff's March 2020 FOIL request. (*E.g.*, Dkt. No. 32, ¶ 29; *see also id.* ¶¶ 47–50 (alleging that "Oren, Borrill and Bagley informed Sciortino of the substance of [the 2016 Action]," that "she was not to respond" to his request, and "not to provide the photographs")). Plaintiff further alleges that these three Defendants "resorted" to this conduct after Defendant Oren "failed to obtain a protective order" from this Court relieving City of Utica officials from their duty to respond to Plaintiff's FOIL requests. (*Id.* ¶¶ 71–72). According to the amended complaint, Sciortino "is withholding the records to assist Oren and Bagley in defending their [City of Utica] clients," and "[w]ere it not for Oren, Bagley and Borrill, Sciortin[o] would have provided the requested photographs." (*Id.* ¶¶ 57–58).

Taking these allegations as true, together with the allegations about the Joint Defense Agreement, and drawing all reasonable inferences in Plaintiff's favor, at this stage of the

proceedings the Court cannot find as a matter of law that Bagley was not engaged in joint action with state actors. To act under color of state law, "it is enough that the private party is a willful participant in joint action with the State or its agents." *Forbes v. City of New York*, No. 05-cv-7331, 2008 WL 3539936, at *5, 2008 U.S. Dist. LEXIS 63021, at *12 (S.D.N.Y. Aug. 12, 2008) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)) (brackets omitted). The "touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy'" shared by the private actor and the State. *Id.*, 2008 WL 3539936, at *5, 2008 U.S. Dist. LEXIS 63021, at *13. While a private actor does not act under color of state law merely by communicating or cooperating with a state actor, he does act under color of state law by taking a "more active role." *Anilao*, 774 F. Supp. 2d at 498–99, 501–02. Here, the amended complaint alleges that, in addition to willingly participating in joint action with Oren and Borrill, Bagley exerted influence over Sciortino, another state actor, and thus was acting under color of state law. *Cf. id.* at 502 (finding that the plaintiffs plausibly alleged that private parties acted under color of state law where they were "actively involved in the investigation and prosecution" of the plaintiffs and the public defendants "did not exercise independent judgment"); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941–42 (1982) (holding that private party who sought prejudgment attachment of a debtor's property and thereby "invoke[ed] the aid of state officials to take advantage of state-created attachment procedures" acted under color of state law).[14]

Thus, the Court denies Bagley's motion to dismiss for failure to plausibly allege that he acted under color of state law.

---

[14] Further, "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 claims, even if the state actor himself is immune from liability." *Anilao*, 774 F. Supp. 2d at 503 n.34 (internal quotation marks, citation, and brackets omitted); *see Dennis*, 449 U.S. at 27–29 ("Under these allegations, the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability."). Thus, the fact that the City Defendants are immune for this same conduct does not alter the Court's conclusion.

### 2.      Fourteenth Amendment Equal Protection Claim

Bagley moves to dismiss Plaintiff's Fourteenth Amendment Equal Protection claim,

arguing that Plaintiff has not stated a class-of-one or class-based claim. (Dkt. No. 50-1, at 17–

18).[15] In response, Plaintiff provides information regarding comparator George Kuchma, (Dkt.

No. 61, at 20), but does not otherwise address his Equal Protection claim.

While not entirely clear, it appears, reading the amended complaint liberally, that

Plaintiff intends to assert a Fourteenth Amendment Equal Protection claim based on a theory of

selective treatment. *See generally LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980).[16] To state a

claim for an Equal Protection violation based on selective enforcement under *LeClair*, a plaintiff

must allege that: "(1) the person, compared with others similarly situated, was selectively treated,

and (2) the selective treatment was motivated by an intention to discriminate on the basis of

impermissible considerations, such as race or religion, to punish or inhibit the exercise of

constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu*, 927 F.3d at

91 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). Thus, under this test, a

---

[15] As an initial matter, Bagley argues that an alleged violation of FOIL "does not give rise to a federal claim under Section 1983." (Dkt. No. 50-1, at 15–16). The Court does not read the amended complaint as asserting claims for violations of FOIL per se. Rather, Plaintiff asserts standalone claims to vindicate his Fourteenth and First Amendment rights.

[16] Plaintiff's allegations do not appear to support a class-based Equal Protection claim, as he does not allege that Defendants treat classes of people differently but rather that he was "singled out" for treatment. (Dkt. No. 32, at 13). Further, Plaintiff's allegations do not support a "class of one" Equal Protection claim, in which a plaintiff alleges that he was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). An *Olech* class of one claim requires "extremely high" similarity between the plaintiff and a comparator, and the plaintiff must ultimately prove that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Hu v. City of New York*, 927 F.3d 81, 94 (2d Cir. 2019) (citation omitted); *see id.* at 91–96 (distinguishing between *LeClair* and *Olech* claims). Plaintiff has not plausibly alleged "extremely high" similarity between him and any of the alleged comparators.

plaintiff must show both "disparate treatment and impermissible motivation." *Id.* (quoting *Bizzaro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)).

To prevail on a *LeClair* selective treatment claim, "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance" but need not be "identical." *Id.* at 96 (citations omitted). In other words, a plaintiff must show that he "was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." *Id.* (citation omitted). Here, the Court agrees with Bagley, (Dkt. No. 50-1, at 17–18), that the amended complaint itself does not allege any comparator with circumstances bearing a "reasonably close resemblance" to Plaintiff's: the allegations regarding John Roe, Jane Roe, and Latisha Bradford make no mention of their protected characteristics, if any, which Plaintiff alleges were relevant to Defendants' treatment of him, including race, ethnicity, and litigation status, (*see* Dkt. No. 32, ¶¶ 65–67). Furthermore, Plaintiff's allegation that he was "the only African/black person who has submitted a FOIL request and was denied because of His race/ethnicity and that he had a Federal Lawsuit against City of Utica employees (police officers) and friends of the defendants" is conclusory and does not plausibly allege the existence of any comparator. (*Id.* ¶ 68).

Nor does the information Plaintiff provided about George Kuchma in his opposition plausibly allege the existence of a comparator with "reasonably close" circumstances in material respects. Plaintiff asserts that Kuchma (1) is white, (2) sued the City of Utica and a City police officer, (3) filed a FOIL request for UPD photographs while his lawsuit was pending, and (4) received the photographs requested in his FOIL request. (Dkt. No. 61, at 20). However, there are other significant salient facts which distinguish Plaintiff's circumstances from those of Kuchma: (1) Plaintiff was provided the photographs at issue in response to his 2009 or 2010 FOIL request, first in black and white and then on CDs; (2) Plaintiff filed the FOIL requests at issue in this case

21

after the close of discovery in the 2016 Action; (3) the March 2020 FOIL request for the photographs was repetitive; and (4) Defendants objected to FOIL requests beyond what was discoverable in the 2016 Action, by seeking a protective order and then removing the Article 78 proceedings to this Court and arguing that there was supplemental jurisdiction. Given this years-long history of FOIL requests and litigation between the parties, Plaintiff has not plausibly alleged that his and Kuchma's circumstances bear a reasonably close resemblance in material respects. *Cf. Marom v. Town of Greenburgh*, No. 18-cv-7637, 2020 WL 978514, at *8, 2020 U.S. Dist. LEXIS 34724, at *19–23 (S.D.N.Y. Feb. 28, 2020) (finding that the plaintiff had not plausibly alleged a comparator with reasonably close circumstances where the plaintiff's "additional [building] violations further distinguish[ed]" him from two alleged developer comparators).

Accordingly, the Court grants Bagley's motion to dismiss Plaintiff's Fourteenth Amendment Equal Protection claim.

### 3.   First Amendment Denial of Access to the Courts Claim[17]

Bagley moves to dismiss Plaintiff's claim for denial of access to the courts on the ground that Plaintiff's allegations are "conclusory and formulaic" and that the dismissal of claims in the 2016 Action at summary judgment "had nothing to do" with Plaintiff's not having all of the requested photographs. (Dkt. No. 50-1, at 18–20). Plaintiff responds that he has plausibly alleged a right-of-access claim based on the allegations that Plaintiff was not provided with the photographs' unmodified metadata, which was "evidence [he] needed" in the 2016 Action or that, "[a]t worst," his claim has not yet accrued. (Dkt. No. 61, at 16–18).

---

[17] Plaintiff's second cause of action is labeled as a claim for "1st Amendment Denial of Access to Court, Retaliation." (Dkt. No. 32, at 14). Bagley's motion to dismiss does not address Plaintiff's First Amendment retaliation claim.

The First Amendment right to petition the government, which applies to the states through the Fourteenth Amendment, "extends to all departments of the Government, including the Courts." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) (citation omitted). "A plaintiff's constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress." *Id.* (citation and internal quotation marks omitted). Circuit Courts of Appeals have "recognized two variants of right-of-access claims": (1) "forward-looking suits," in which plaintiffs allege that "'systemic official action' frustrated their ability to file a suit," and (2) "backward-looking" claims "covering suits that 'cannot now be tried (or tried with all material evidence), no matter what official action may be in the future.'" *Sousa v. Marquez*, 702 F.3d 124, 127–28 (2d Cir. 2012) (citation omitted). A plaintiff may have a backward-looking right-of-access claim, for example, where the official action "caused the loss or inadequate settlement of a meritorious case." *Id.* at 128.

Here, although Plaintiff argues that he has plausibly alleged a right-of-access claim under either theory, the amended complaint contains no factual allegations that would support a forward-looking claim. Plaintiff makes no allegations of "systemic official action" which has frustrated his ability to file a lawsuit, and he has in fact filed many.

Moreover, the Second Circuit has not recognized the viability of backward-looking right-of-access claims. *See id.* (noting that the "viability of backward-looking right-of-access claims is far from clear in this Circuit" and declining to decide the issue); *Kern v. Contento*, No. 21-cv-1672, 2022 WL 1112767, at *3, 2022 U.S. App. LEXIS 10073, at *7 (2d Cir. Apr. 14, 2022) (summary order) (noting that *Sousa* "declined to decide whether to follow other circuits in recognizing a backward-looking claim"). However, the Second Circuit has noted that such claims, "if recognized," would be available only if the official action "caused the plaintiff's suit

to be dismissed as untimely" or "was so severe as to render hollow his right to seek redress." *Sousa*, 702 F.3d at 128 (internal quotation marks, brackets, and citations omitted). Therefore, a plaintiff cannot maintain a backward-looking access claim alleging that government defendants "concealed or manipulated relevant facts" if the plaintiff was aware of the facts giving rise to his claim at the time of the earlier lawsuit. *Id.* (explaining that a plaintiff who has such knowledge of the facts giving rise to his access claim "*does* have adequate access to a judicial remedy"). Here, even accepting as true Plaintiff's allegations that the failure to respond to his March 2020 FOIL request deprived him of evidence which would have helped him in the 2016 Action, he has not alleged any facts of which he was unaware at the relevant times of the 2016 Action. Indeed, Plaintiff states in his opposition that he was aware of the alleged modifications to the metadata as early as 2018. The Court further takes judicial notice of documents and filings in the 2016 Action indicating that the issue of the allegedly modified metadata associated with the 22 photographs was raised multiple times, including before the close of discovery. *See, e.g.*, *Jeanty*, No. 16-cv-966, Dkt. Nos. 279 (ordering Defendants to "produce another CD with all of the color photographs and accompanying metadata . . . along with a sworn statement from Sgt. Selimovic" that, among other things, "the photographs on the CD are all of the photographs related to [the incident], [and] that the metadata is complete"), 300-7 (sworn Selimovic affidavit). Thus, even assuming the viability of a backward-looking right-of-access claim, Plaintiff's claim "would fall outside the scope of that purported right." *Cf. Kern*, 2022 WL 1112767, at *3, 2022 U.S. App. LEXIS 10073, at *7.

Accordingly, the Court grants Bagley's motion to dismiss Plaintiff's claim for denial of access to the courts.

4.      **Conspiracy**

The amended complaint, while not expressly asserting a claim for conspiracy, alleges that the named Defendants "conspired and agreed that Sciortino would not follow and/or apply the requirements of [Public Officers Law] Sections 84–90 to Plaintiff because Plaintiff was suing City of Utica employees and friends of defendants" and "because Plaintiff is black and an immigrant." (Dkt. No. 32, ¶¶ 56–57). Bagley moves to dismiss any conspiracy claims, arguing that Plaintiff's allegations of conspiracy are too conclusory. (Dkt. No. 50-1, at 20–21). Plaintiff generally responds that he has adequately pleaded a conspiracy claim pursuant to both Section 1983 and Section 1985. (Dkt. No. 61, at 20–22).

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). A plaintiff must also show that that the conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.*

Mere conclusory or general allegations of a conspiracy, however, are insufficient to state a claim of conspiracy. *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005); *see Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy

to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (citation omitted)). To state a viable conspiracy claim, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (internal quotation marks and citations omitted). Here, the Court agrees with Bagley that Plaintiff's conclusory allegations that the named Defendants "conspired" to have Sciortino not respond to his FOIL request are insufficient to state a conspiracy claim.[18]

Accordingly, the Court grants Bagley's motion to dismiss any conspiracy claim asserted under Section 1983 or 1985.

## V.   LEAVE TO AMEND

Plaintiff requests an opportunity to amend the amended complaint but offers no details about what amendments he seeks to make. (Dkt. No. 61, at 29). Defendants argue that Plaintiff should not be given leave to amend. (Dkt. No. 67, at 10–11; Dkt. No. 68, at 9).

Ordinarily, a court "should not dismiss" a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). However, a court can deny a request to amend as futile where the problem with the claim is "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here,

---

[18] The Court further notes that while "a plaintiff may assert a civil conspiracy claim under § 1983 for the deprivation of a constitutional right, he must first show a violation of the underling constitutional right." *DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 373 (E.D.N.Y. 2016).

any amendment of the claims against Sciortino, Borrill, and Oren which are barred by absolute immunity would be futile, and Plaintiff is not granted leave to amend those claims. Given the fact that Plaintiff has already amended once, and has not identified any additional facts or basis for amendment, the Court is skeptical as to whether there is any viable basis to amend.[19] However, in recognition of Plaintiff's status as a pro se litigant and because it may be possible for Plaintiff to assert additional cognizable claims with better pleading, Plaintiff is otherwise granted leave to seek to amend.

If Plaintiff seeks to amend, Plaintiff must file a second amended complaint within twenty-one (21) days of this Order. Plaintiff is reminded that the second amended complaint will replace the existing amended complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks and citations omitted)). Any second amended complaint should contain *all* factual allegations relevant to Plaintiff's claims, and the paragraphs should be correctly numbered.

## VI.    CONCLUSION

For these reasons, it is hereby

---

[19] The Court notes that Plaintiff already took advantage of the opportunity to amend his original complaint as a matter of course in response to Defendants' original motions to dismiss. Although Defendants' original motions to dismiss raised mostly the same arguments Defendants make in the motions to dismiss presently under consideration, (*see* Dkt. Nos. 29, 30), Plaintiff amended the original complaint by, for example, (1) adding the City of Utica as a defendant, without including any allegations about the City; (2) adding Defendant Selimovic and a cause of action for fraud on the court, both of which he promptly agreed to dismiss in response to Defendants' motions; and (3) adding Defendants Brown and Martino, whose only alleged conduct occurred in 2009. (*Compare* Dkt. No. 1, *with* Dkt. No. 32).

**ORDERED** that Defendants City of Utica, Charles Brown, Anthony Martino, Edin Selimovic, Melissa Sciortino, William Borrill, and Zachary Oren's motion to dismiss (Dkt. No. 56) is **GRANTED**; and it is further

**ORDERED** that Defendant David Bagley's motion to dismiss (Dkt. No. 50) is **GRANTED in part**; and it is further

**ORDERED** that all claims against Defendants City of Utica, Charles Brown, and Anthony Martino are **DISMISSED without prejudice**; and it is further

**ORDERED** that all claims against Defendants Edin Selimovic, Melissa Sciortino, William Borrill, and Zachary Oren are **DISMISSED with prejudice**; and it is further

**ORDERED** that the following claims against Defendant Bagley are **DISMISSED without prejudice**: the First Amendment denial of access to the courts claim, the Fourteenth Amendment Equal Protection claim, and any conspiracy claims; and it is further

**ORDERED** that Defendant Bagley's motion to dismiss (Dkt. No. 50) is otherwise **DENIED** and Plaintiff's First Amendment retaliation claim against Bagley survives; and it is further

**ORDERED** that if Plaintiff seeks to amend, Plaintiff must file the second amended complaint within twenty-one (21) days of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within twenty-one days of this Order, the above claims that are dismissed without prejudice shall be dismissed with prejudice, without further Order of the Court, and any Defendant for whom there is no remaining claim left shall be terminated, without further Order of the Court; and it is further

**ORDERED** that the Clerk of the Court is directed to serve this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>April 13, 2023</u>
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge