**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

VLADIMIR JEANTY,

Plaintiff, 6:22-cv-00319 (BKS/CBF)

v.

DAVID BAGLEY, ESQ.,

Defendant.

---

**Appearances:**

*Plaintiff Pro Se:*
Vladimir Jeanty
Arverne, New York 11692

*For Defendant:*
Laura L. Spring
Lippes Mathias LLP
507 Plum Street, Suite 310
Syracuse, New York 13204

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff pro se Vladimir Jeanty brought this 42 U.S.C. § 1983 action stemming from New York Freedom of Information Law ("FOIL") requests he submitted to the City of Utica in connection with his 2009 arrest and subsequent civil litigation. (Dkt. No. 32). The sole remaining claim is Plaintiff's First Amendment retaliation claim against Defendant David Bagley. *See Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 119 (N.D.N.Y. 2023). The operative amended complaint alleges that Bagley, an attorney who represented a law enforcement officer Plaintiff sued in the civil litigation, retaliated against Plaintiff by directing the City's records access officer not to

respond to Plaintiff's FOIL requests. (*See* Dkt. No. 32, ¶¶ 29, 48–50). Presently before the Court is Defendant Bagley's motion for summary judgment. (Dkt. No. 155). The motion is fully briefed. (Dkt. Nos. 155-10, 162-1, 162-4, 165-4). For the reasons that follow, the motion is granted.

## II. FACTS[1]

In 2009, City of Utica Police Department ("UPD") officers arrested Plaintiff, leading to his eventual state prosecution and conviction. (Dkt. No. 162-2, ¶¶ 3–4). A state court later vacated that conviction based on a violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and Plaintiff commenced a § 1983 and state law action (the "2016 action") arising from the prosecution and related events. (*See* Dkt. No. 162-2, ¶¶ 6, 17–20); *see also Jeanty v. Cerminaro*, No. 21-1974-cv, 2023 WL 325012, at *1, 2023 U.S. App. LEXIS 1421, at *1–2 (2d Cir. Jan. 20, 2023). The Court assumes familiarity with the 2016 action and discusses below only those facts, taken from the current summary judgment record, necessary to explain its decision.

Defendant Bagley is a private attorney who has never worked for the City of Utica. (Dkt. No. 155-1, ¶¶ 2, 4). He represented one of the defendants in the 2016 action, UPD Lieutenant Sean Dougherty. (*Id.* ¶ 3; Dkt. No. 162-2, ¶ 21). While representing Dougherty, Defendant signed a Joint Defense and Confidentiality Agreement ("JDA") with the City's first assistant corporation counsel, Zachary Oren, who represented other UPD officials in the 2016 action. (Dkt. No. 155-1, ¶ 6; *see also* Dkt. No. 162-18, at 3–5). The complaint alleges that Oren, Bagley, and the City's corporation counsel told the city records access officer not to respond to Plaintiff's 2019 and 2020 FOIL requests. (*See* Dkt. 32, ¶¶ 29, 48–50).

[1] The facts, which the Court construes in the light most favorable to Plaintiff as the non-movant, are drawn from the parties' exhibits submitted in connection with Defendant's summary judgment motion. *See Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

Before the 2016 action, Plaintiff received, in response to a prior FOIL request, 22 photographs taken at the scene of his arrest. (*See* Dkt. No. 162-2, ¶¶ 5–8). Those photographs formed the basis of the above-mentioned *Brady* violation and were at issue in the 2016 action. (*See id.* ¶¶ 17–29, 33–38, 45–49). In that action, Plaintiff avers, Dougherty "falsely testified" that he took some or all of the 22 photographs, and that UPD Officer Michael Cerminaro "was in the photographs." (*Id.* ¶¶ 7–15). During discovery in the 2016 action, Defendant "provided [Plaintiff those] photographs on a CD [two] different times." (*Id.* ¶ 22). Each time Defendant did so, Plaintiff says, the photographs' metadata contained discrepancies from those Oren provided in discovery, from those Plaintiff obtained following his prior FOIL request, and "from those on the [City's records maintenance system ("RMS")] server where [the City] stored the photographs." (*See id.* ¶¶ 23–26; *see also* Dkt. No. 162-13 (Plaintiff's expert report concerning metadata)). According to Plaintiff, he needed the photographs and "the original unaltered [m]etadata from the UPD RMS [s]ystem," as they "were integral to[]," and "the most important evidence needed to prosecute," the 2016 action. (*See* Dkt. No. 162-2, ¶¶ 29, 41).

After unsuccessful attempts to obtain this information through the discovery process, Plaintiff turned to FOIL. (*Id.* ¶¶ 27–30). His first October 2019 FOIL request sought, among other things, "RMS documents for all arrests made by" Cerminaro and Dougherty, "[i]ncluding . . . photographs." (Dkt. No. 162-20, at 1–3; Dkt. No. 162-2, ¶ 31). A City official responded via email, "asking why [Plaintiff] was requesting the records and" about his "relationship to" other individuals named in the request. (Dkt. No. 162-2, ¶ 32). Shortly thereafter, Oren filed a letter request in the 2016 action—copying Plaintiff and all counsel of record, including Defendant—for a protective order "relieving [the City of its duty] to respond to Plaintiff's FOIL request, and

enjoining Plaintiff from making any such future requests."[2] (Dkt. No. 162-10, at 3; Dkt. No. 162-2, ¶ 33). Plaintiff maintained that neither Oren nor Defendant "should [have been] getting involved in" his FOIL request sent directly to the City clerk. (*See* Dkt. No. 162-2, ¶ 34).

Magistrate Judge Thérèse Wiley Dancks held a conference addressing Oren's request and other matters. (*Id.* ¶¶ 35–38; *see generally* Dkt. No. 162-6). Following the conference, Judge Dancks ordered Oren "to again provide [Plaintiff] the 22 photographs and [m]etadata," together with an affidavit explaining the metadata produced. (*See* Dkt. No. 162-2, ¶ 38; Dkt. No. 162-6, at 52–53, 89). Oren produced the photographs and metadata—copying Defendant—as well as an affidavit from UPD Sergeant Edin Selimovic confirming that he had extracted and produced, unaltered, "all [requested] photographs and accompanying metadata." (Dkt. No. 162-15, ¶¶ 1, 4–5; Dkt. No. 162-2, ¶¶ 45, 47). Plaintiff avers, however, that the metadata from this production, too, differed from the "previously disclosed . . . [m]etadata." (Dkt. No. 162-2, ¶ 46).

Eventually, Plaintiff filed a second FOIL request in March 2020, specifically seeking the 22 photographs in color on CD, "with all metadata attached." (Dkt. No. 162-20, at 4–6 (emphasis omitted); Dkt. No. 162-2, ¶ 40). The City's corporation counsel responded the following May, refusing "to respond to [Plaintiff's] purported [March 2020] FOIL request absent judicial intervention." (Dkt. No. 162-8, at 8; Dkt. No. 162-2, ¶ 43).

Unsatisfied with the City's response, Plaintiff commenced two Article 78 proceedings in New York supreme court, challenging the City's refusal to respond to his October 2019 and

---

[2] In a November 2019 letter sent to Plaintiff—again copying counsel of record in the 2016 action, including Defendant—Oren reiterated this position, explaining that in the City's view, the district court had "supplemental jurisdiction over [Plaintiff's] FOIL matter." (*See* Dkt. No. 162-17, at 1–2; *see also* Dkt. No. 155-3, at 572–73 (January 24, 2020 letter to the court reflecting same)).

March 2020 FOIL requests.[3] (*See* Dkt. No. 162-2, ¶¶ 39, 42). The City attempted to remove these proceedings to federal court. (*See id.*; *see also* Dkt. No. 162-19). Ultimately, however, this Court remanded both actions back to state court. (Dkt. No. 162-2, ¶ 44); *see generally Jeanty v. Utica Police Dep't*, No. 6:20-cv-00221, 2021 WL 1055153, 2021 U.S. Dist. LEXIS 51977 (N.D.N.Y. Mar. 19, 2021).

Following this removal litigation, the City's records access officer, Melissa Sciortino, sent Plaintiff an October 2021 letter agreeing to provide some of the requested records, but not others. (*See* Dkt. No. 155-3, at 614–15; *see also id.* at 616–17 (November 2021 letter to Plaintiff from the City's corporation counsel reiterating the October 2021 letter's response)). Sciortino sent Plaintiff a second letter the following January, explaining that the October 2021 letter had been "sent out of [her] office [due to] an administrative error." (*See id.* at 618). She attached to this second letter a third "letter that [Plaintiff] should have received" in October 2021. (*See id.*). The third letter also agreed to provide Plaintiff some, but not all, of the requested information.[4] (*See id.* at 619–20).

To date, Plaintiff says, the City has failed to adequately respond to his FOIL requests. (Dkt. No. 162-2, ¶ 50). The Article 78 proceeding stemming from Plaintiff's March 2020 FOIL request remains pending in state supreme court. (*See* Dkt. No. 162-21, at 1; *see also* Dkt. No. 162, at 8–9). Plaintiff attributes the City's inadequate response in part to Defendant, alleging that

[3] Article 78 proceedings are "special proceedings in which a petitioner may obtain speedy review of state administrative action," *Whitfield v. City of New York*, 96 F.4th 504, 511 (2d Cir. 2024), including municipal responses to FOIL requests, *see Wagner v. N.Y.C. Dep't of Health & Mental Hygiene*, 246 A.D.3d 748, 749 (2d Dep't 2026).

[4] The third letter is dated June 2020, though the record does not reveal why. (*See* Dkt. No. 155-3, at 619). The amended complaint also alleges that Sciortino responded to Plaintiff's March 2020 FOIL request the same month, shortly after he submitted it. (*See* Dkt. No. 32, ¶ 21). As explained below, however, the Court cannot consider the amended complaint "as evidence for summary judgment purposes" because it is neither sworn nor compliant with 28 U.S.C. § 1746. *See Brandon v. Kinter*, 938 F.3d 21, 26 n.5 (2d Cir. 2019). In any event, for purposes of this motion, the Court must accept as true Plaintiff's contention that the City failed to adequately respond to his FOIL requests, so the precise date of Sciortino's response is immaterial. *See Gilles*, 511 F.3d at 243.

Defendant "retaliated against [him] in violation of the First Amendment by communicating with or influencing [City] officials," including Sciortino and Oren, "to deny and obstruct [his] FOIL requests for photographs and [m]etadata." (Dkt. No. 162, at 2).

For his part, Defendant avers that he "had no connection with, control, or influence over the [City's] records access procedures, including those concerning FOIL requests." (Dkt. No. 155-1, ¶ 26). "Relative to [his] representation of Dougherty," Defendant continues, he "never met" Sciortino and "never engaged in any [verbal or written] communications with" her. (*See id.* ¶¶ 30–32; *see also* Dkt. No. 155-8, at 9, 14–15 (Defendant's deposition testimony)). Nor did he "interfere with, or ask Sciortino to interfere with, Plaintiff's [March 2020] FOIL request." (Dkt. No. 155-1, ¶ 33; Dkt. No. 155-8, at 14–15). Defendant further avers that he did not "discuss[] or communicate[] with any person at, or connected with, the City of Utica regarding responding to Plaintiff's FOIL request(s)." (Dkt. No. 155-1, ¶ 34; *see also* Dkt. No. 155-8, at 36–37). Indeed, Defendant testified, he had never seen either of Plaintiff's FOIL requests before his deposition in this action. (Dkt. No. 155-8, at 16).

## III. STANDARD OF REVIEW

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248). The movant may

meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (per curiam) (explaining that summary judgment is appropriate where the nonmoving party fails "'to come forth with evidence sufficient to permit a reasonable juror to return a verdict in [their] favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alterations adopted) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Courts are "ordinarily obligated to afford a special solicitude to *pro se* litigants," but the "appropriate degree of special solicitude is not identical with regard to all *pro se* litigants." *Tracy*

*v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010). In this case, the Court previously concluded that, despite Plaintiff's litigation history "weigh[ing] in favor of granting [him] less solicitude than an ordinary pro se litigant," some solicitude was nevertheless appropriate "in an abundance of caution." *See Jeanty*, 669 F. Supp. 3d at 107. At this stage, the Court continues to afford that solicitude—tempered, however, by its previous warning to Plaintiff that he was to "comply with the Federal Rules of Civil Procedure and" Local Rules "given [his] adeptness in litigation." *Id.*

## IV. DISCUSSION

### A. Rule 56(d)

Preliminarily, Plaintiff argues that he lacks sufficient information to oppose Defendant's summary judgment motion. (*See* Dkt. No. 162-1, at 6–7). Defendant disagrees, arguing that Plaintiff had an adequate opportunity for discovery and merely seeks to rehash previous rulings. (*See* Dkt. No. 165-4, at 11–14).

Under Rule 56(d), a party opposing summary judgment must submit an affidavit or declaration showing "that, for specified reasons, it cannot present facts essential to justify its opposition." That declaration or affidavit must detail: "(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort [the] affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (citation modified). In turn, the court may defer decision on the motion, deny it, allow additional discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d)(1)–(3).

"[A]s in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." *Cimontubo - Tubagens e Soldadura, LDA v. Petroleos de Venezuela, S.A.*, No. 21-875-cv, 2022 WL 2155285, at *3, 2022 U.S. App. LEXIS

16513, at *8–9 (2d Cir. June 15, 2022) (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012)). And "it is well established that '[a] court may properly deny further discovery' under Rule 56(d) 'if the nonmoving party has had a fully adequate opportunity for discovery.'" *Id.*, 2022 WL 2155285, at *4, 2022 U.S. App. LEXIS 16513, at *9 (quoting *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)).

To the extent Plaintiff's Rule 56(d) arguments implicate the Court's previous discovery rulings, those rulings are subject to the law of the case doctrine. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). That doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

**1. Sciortino's Testimony**

Plaintiff first seeks Sciortino's deposition testimony. Plaintiff requires it to oppose summary judgment, he argues, because Sciortino "is the only witness who can testify from personal knowledge about whether [Defendant], Oren, or any other [City] employee communicated with her regarding [Plaintiff's] FOIL requests, what instructions if any she received, and why she did not respond." (Dkt. No. 162, at 3; Dkt. No. 162-1, at 8).

In September 2023, Plaintiff sought only to serve Sciortino with a subpoena for various documents, not to have her testimony taken, (*see* Dkt. No. 91-3, at 1, 4–5; Dkt. No. 123, at 8), though he "reserve[d] the right to serve [a] deposition subpoena[] to" her, (Dkt. No. 91, at 1). Judge Dancks quashed the subpoena seeking documents, concluding that it was "unduly burdensome," "not proportional to the needs of the case," and sought privileged information. (*See* Dkt. No. 123, at 8–10).

Then, in November 2025—shortly before the December 1, 2025 discovery deadline that had been extended multiple times since discovery commenced in August 2023—Plaintiff requested a subpoena to depose Sciortino on December 8, 2025. (Dkt. No. 139, at 1; Dkt. No. 139-1, at 1; *see also* Dkt. Nos. 85, 109, 124, 128, 140). In that request, Plaintiff stated that he required her testimony "to provide evidence regarding the 22 photographs and [m]etadata relating to the CD provided by" Defendant to Plaintiff during the 2016 action—as well as "the same 22 photographs and [m]etadata" Selimovic provided—explaining that the proposed deposition would "focus on the [m]etadata itself, it's location, it's source, etc." (*See* Dkt. No. 139, at 1). In a conclusory fashion, Plaintiff also argued that the evidence was "necessary to assist in supporting the remaining retaliation claim against Defendant Bagley." (*Id.*).

Judge Dancks denied Plaintiff's request as untimely. (Dkt. No. 143). The Court had granted multiple discovery extensions, Judge Dancks explained. (*Id.*). And at a recent conference held to "discuss[] all remaining discovery [issues] with the parties," Plaintiff had "failed to raise the issue of the requested [deposition] subpoena." (*Id.*). Additionally, Plaintiff sought only to ask Sciortino questions "about the metadata related to the photographs," which was not relevant to the surviving First Amendment retaliation claim. (*Id.*).

In light of this procedural history, the Court concludes that Plaintiff "had a fully adequate opportunity for discovery" as to Sciortino's testimony. *See Trebor Sportswear Co.*, 865 F.2d at 511. Plaintiff had ample time to depose Sciortino and as early as September 2023 "reserve[d] [his] right to" do so. (*See* Dkt. No. 91, at 1). Nevertheless, he chose to request the deposition shortly before the discovery deadline—with a proposed deposition date after that deadline, (*see* Dkt. No. 139-1, at 1; Dkt. No. 140)—and then only seeking information different from that he now says is essential to oppose Defendant's motion. (*Compare* Dkt. No. 139, at 1 ("The

deposition sought will focus on the [photographs'] Metadata . . . ."), *with* Dkt. No. 162, at 3 (seeking testimony as to communications concerning FOIL requests)). No Rule 56(d) relief is warranted as to Sciortino's testimony.

### 2. Oren's and Selimovic's Testimony and Documents

Plaintiff next argues that he requires deposition testimony and documents from Oren and Selimovic. (Dkt. No. 162, at 3–4; Dkt. No. 162-1, at 8–10). Plaintiff previously subpoenaed such documents in September 2023. (*See* Dkt. No. 91-2, at 1, 4–6; Dkt. No. 91-4, at 1, 4–5). As with Sciortino, Judge Dancks quashed the Oren and Selimovic subpoenas as "unduly burdensome," "not proportional to the needs of the case," and seeking privileged information. (*See* Dkt. No. 123, at 8–10). She noted that Plaintiff "made no effort to limit the information sought since the motion [to quash] was filed, nor [did] he provide[] any particularity to describe the documents sought and how they relate[d] to the remaining claim." (*Id.* at 8). Plaintiff did not appeal Judge Dancks's decision, and he "reserve[d] [his] right to" depose Oren and Selimovic, too, but failed to seek their testimony until now. (*See* Dkt. No. 91, at 1). Given the lengthy history of discovery in this case—including multiple extensions—and Plaintiff's adeptness at litigation, the Court again concludes that Plaintiff "had a fully adequate opportunity for discovery" as to this testimony and related documents. *See Trebor Sportswear Co.*, 865 F.2d at 511; *cf. Glass v. Bozzuto's, Inc.*, No. 3:21-cv-1486, 2023 WL 3434989, at *12, 2023 U.S. Dist. LEXIS 83561, at *33 (D. Conn. May 12, 2023) (collecting cases in which "the Second Circuit has held that parties had an adequate opportunity for discovery in cases with [months-long discovery] timeframes"). Thus, no Rule 56(d) relief is warranted.

### 3. The Joint Defense Agreement

Plaintiff further argues that he requires the full, unredacted text of the JDA to oppose Defendant's motion. (Dkt. No. 162, at 4–6; Dkt. No. 162-1, at 10–11). According to Plaintiff, his

inability to examine that text precludes him from learning "the scope of the[] coordinated communication channels [between Defendant and Oren], the duration of the agreement, and the identity of all participants." (Dkt. No. 162, at 5). Judge Dancks, however, previously reviewed the full JDA *in camera* and concluded that it contained "no relevant or discoverable information." (Dkt. No. 124, at 8). Plaintiff now says that her "conclusion was based on a standard that may not capture relevant circumstantial evidence." (Dkt. No. 162, at 5). But he failed to appeal this ruling during discovery, too. And nothing suggests that the experienced magistrate judge failed to apply the well-established discovery relevance standard.[5] Accordingly, Plaintiff is not entitled to Rule 56(d) relief as to this evidence, either.

**4. Defendant's Privilege Log**

Plaintiff also seeks "the contents" of three emails, listed in a privilege log, between Defendant and Oren concerning Plaintiff's FOIL requests. (*See* Dkt. No. 162-1, at 11–12; Dkt. No. 162, at 6–7; *see also* Dkt. No. 162-18, at 7–8). Judge Dancks previously concluded that these emails' contents were privileged but ordered Defendant to produce the privilege log. (*See* Dkt. No. 124, at 10–14). Plaintiff did not appeal that ruling, and Defendant produced the log in May 2025, months before the December 2025 discovery deadline and Defendant's February 2026 summary judgment motion. (Dkt. No. 162-18, at 1, 8). Plaintiff had ample opportunity to raise the issue of these email's contents with Judge Dancks and request that she conduct an *in camera* review. Instead, he waited to raise the issue in opposition to Defendant's motion. He therefore "had a fully adequate opportunity for discovery" into the contents of these emails, and again, no

[5] If anything, to the extent the magistrate judge relied on *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), she arguably applied a broader, more forgiving discovery relevance standard than the current Federal Rules of Civil Procedure prescribe. *See Peterson v. Corby*, 347 F.R.D. 192, 194–95 (E.D. Mich. 2024) (concluding that 2015 rules amendment narrowed *Oppenheimer*'s discovery relevance standard); (Dkt. No. 124, at 4 (quoting *Oppenheimer*)).

Rule 56(d) relief is warranted. *See Trebor Sportswear Co.*, 865 F.2d at 511; *Glass*, 2023 WL 3434989, at *12, 2023 U.S. Dist. LEXIS 83561, at *33.

### 5. Incomplete Deposition Answers

Plaintiff further asserts that he requires more complete answers to questions he asked while deposing Defendant, "including on the subject of the three withheld emails and on questions relating to the scope of communications under the JDA." (Dkt. No. 162, at 7; Dkt. No. 162-1, at 12). During Defendant's deposition, Plaintiff says, defense counsel improperly "engaged in repeated speaking objections and instruct[ed] [Defendant] not to answer." (*See* Dkt. No. 162, at 7). As Plaintiff admits, however, he previously raised the same issue before Judge Dancks in a motion to compel. (*Id.*; *see also* Dkt. No. 144). Although that motion was untimely and brought without prior permission as required by the local rules, Judge Dancks held a conference to determine whether to grant such permission. (*See* Dkt. No. 147). And after reviewing the deposition transcript with the parties, she declined to do so. (*Id.*). Plaintiff appealed that decision, and this Court affirmed, concluding that Judge Dancks acted well within her discretion. (*See* Dkt. No. 153).

This Court's ruling on Plaintiff's appeal is now law of the case, and Plaintiff presents no "cogent" or "compelling" reason to revisit it. *See Ali*, 529 F.3d at 490. His assertion that the Court's "overly harsh management of this case interfered with the discovery process," (Dkt. No. 162-1, at 12), is belied by the record, which reflects multiple discovery extensions in a matter pending since 2022. And in any event, the Court has "broad discretion to limit discovery in a prudential and proportionate way." *See EM Ltd.*, 695 F.3d at 207. No Rule 56(d) is appropriate as to Defendant's deposition testimony, either.

#### 6. Pending Article 78 Proceeding

Finally, Plaintiff argues that the Court cannot decide Defendant's motion because the Article 78 proceeding concerning the March 2020 FOIL request is still pending in state supreme court. (*See* Dkt. No. 162, at 8–9; Dkt. No. 162-1, at 13–15). But whether the state court determines that the City properly responded to that FOIL request has no bearing on the principal issue here, whether Defendant had any involvement in the FOIL response. *See infra* Part IV.B. So the Court, exercising its "broad discretion" in this long-pending case, declines to defer summary judgment until the Article 78 proceeding concludes. *Cf. EM Ltd.*, 695 F.3d at 207.

### B. First Amendment Retaliation

As to the merits of Plaintiff's First Amendment retaliation claim, he "must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011); *Gonzalez v. Hasty*, 802 F.3d 212, 222 (2d Cir. 2015). "With respect to the third requirement, 'it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury.'" *Demarest v. Town of Underhill*, No. 24-147, 2025 WL 88417, at *2, 2025 U.S. App. LEXIS 796, at *6 (2d Cir. Jan. 14, 2025) (alteration adopted) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Nieves*, 587 U.S. at 399). Additionally, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brandon*, 938 F.3d at 36 (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

Here, Plaintiff alleges that, as a result of his litigating the 2016 action and filing FOIL requests, Defendant retaliated against him by, together with Oren, directing Sciortino to deny, or respond inadequately to, his FOIL request. (*See* Dkt. No. 162-4, at 4). Defendant does not dispute that Plaintiff engaged in First Amendment-protected activity. (Dkt. No. 155-10, at 11–12). Instead, he argues that no evidence establishes his personal involvement in the adverse action, or a causal connection between his conduct and "any chilling effect on Plaintiff's speech." (*Id.* at 12–17). The Court agrees.

The record contains no evidence from which a reasonable jury could conclude that Defendant had any role in responding to Plaintiff's FOIL requests. Defendant avers that he never worked for the City. (Dkt. No. 155-1, ¶ 4). So he "had no connection with, control, or influence over the [City's] records access procedures, including those concerning FOIL requests." (*Id.* ¶ 26). "Relative to [his] representation of Dougherty," Defendant "never met" Sciortino and "never engaged in any [verbal or written] communications with" her. (*See id.* ¶¶ 30–32). Nor did Defendant, he avers, "interfere with, or ask Sciortino to interfere with, Plaintiff's [March 2020] FOIL request." (*Id.* ¶ 33). Defendant further avers that he did not "discuss[] or communicate[] with any person at, or connected with, the City of Utica regarding responding to Plaintiff's FOIL request(s)." (*Id.* ¶ 34). Defendant testified similarly at his deposition. (*See* Dkt. No. 155-8, at 9, 14–16, 36–37). And none of the letters Plaintiff received from Sciortino or the City's corporation counsel following the removal litigation reflect that Defendant had any role in the FOIL process. (*See* Dkt. No. 155-3, at 614–20).

Plaintiff argues "that a party's own sworn statements, while not inherently incredible, cannot substitute for objective evidence at the summary judgment stage when the opposing party has presented circumstantial evidence to the contrary." (Dkt. No. 162-4, at 4, 13–14). To be sure,

were there record evidence which, when presented against Defendant's statements, created "genuine issues of material fact that [could] reasonably be resolved in favor of either party," summary judgment would be inappropriate. *See Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 228 (2d Cir. 2024) (citation modified). But none of Plaintiff's evidence would permit a reasonable factfinder to conclude that Defendant had any role in denying the FOIL requests.

Plaintiff first points to the JDA, arguing that it contradicts Defendant's assertion that he never communicated with city officials about FOIL request responses. (Dkt. No. 162-4, at 11–12). As Plaintiff sees it, the JDA "established a formal coordination structure between [Defendant] and . . . Oren"—Defendant's "JDA counterpart"—whom the amended complaint "specifically named . . . as one of the officials who 'told, informed and convinced Sciortino' not to respond to Plaintiff's FOIL requests." (*Id.* at 11 (quoting Dkt. No. 32, ¶¶ 29, 48)). Plaintiff further notes that Defendant "had an obvious, direct motive to ensure" that Sciortino did not produce the photographs' "original metadata," as that information would have harmed his client, Dougherty. (*Id.* at 12).

But even assuming Defendant had an interest in preventing disclosure of the "original metadata," the JDA establishes only the fact of an agreement between Defendant and Oren concerning joint defenses and confidentiality in the 2016 action. Moreover, the Court cannot rely on the complaint's allegations of Defendant's involvement, as it is neither sworn nor compliant with 28 U.S.C. § 1746. *Cf. Brandon*, 938 F.3d at 26 n.5 (considering "as evidence for summary judgment purposes" pro se plaintiff's amended complaint "sworn under penalty of perjury"). And to the extent Plaintiff reiterates similar allegations in other submissions that do comply with § 1746, (*see* Dkt. No. 162, at 2, 10; Dkt. No. 162-5, ¶¶ 1, 3, 7–8, 14, 16, 19), those allegations are too speculative and conclusory—and lacking in the requisite personal knowledge—to defeat

summary judgment. *See Fletcher*, 68 F.3d at 1456; *see also DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (citing Fed. R. Civ. P. 56(c)(4)); Fed. R. Evid. 602. No factfinder could reasonably conclude, without more, that Defendant and Oren conspired to direct Sciortino not to adequately respond to the FOIL requests. *Cf. Casciani v. Nesbitt*, 392 F. App'x 887, 888 (2d Cir. 2010) ("[T]he court is not required to draw *all* inferences in the nonmovant's favor, but only all *reasonable* inferences.").

For this reason, Plaintiff's arguments concerning "temporal alignment" and the City's "broader litigation defense strategy" also fall short. (Dkt. No. 162-4, at 12–13). He asserts that "[t]he temporal alignment between the [2016 action's] pendency and the City's refusal to comply with the FOIL request supports a reasonable inference of coordinated action." (*Id.*). He also says that the City's "own statements reveal" that "the FOIL denial was party of the [City's] broader litigation defense strategy." (*Id.* at 12–13).

Again, even accepting those contentions as true, they fail to establish Defendant's involvement. The only evidence connecting Defendant to this "temporal alignment" and "broader litigation defense strategy" is the JDA and Plaintiff's speculative allegations. (*See id.* at 12 (arguing that "the FOIL denial was part of the broader litigation defense strategy in which [Defendant], as outside defense counsel under the JDA, was a principal participant"); *see also id.* at 12–13 (asserting that the "temporal alignment" occurred "during a period when the JDA . . . was presumably operative")). That evidence, even combined with Defendant's alleged motive, is not enough. *See Casciani*, 392 F. App'x at 888.

Plaintiff also points to the privilege log reflecting three emails between Defendant and Oren. (Dkt. No. 162-4, at 13). But the log reflects only that the two communicated about a "[l]etter to Plaintiff regarding [d]istrict[c]ourt jurisdiction," a "[c]ommunication from Plaintiff

regarding [the] filing of [an] Article 78 proceeding," and a "[d]istrict[c]ourt filing in pending litigation." (Dkt. No. 162-18, at 8). And the fact that the two communicated on those issues does not show that Defendant had any role in directing the non-response to Plaintiff's FOIL requests. Similarly, neither Oren's copying Defendant with other counsel of record on letters he sent while litigating the 2016 action, nor the fact that the two appeared at the same depositions and court conferences, establishes Defendant's involvement. (*Contra* Dkt. No. 162-5, ¶¶ 3, 7–9, 14).

Finally, Plaintiff asserts that "the absence of documentary evidence of communication does not establish that no communication occurred." (Dkt. No. 162-4, at 14). But he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. None of the above evidence would permit a reasonable jury to infer that Defendant played any role in Sciortino's non-response, the relevant adverse action. *See Brandon*, 938 F.3d at 36. Nor could a reasonable jury conclude that Defendant's allegedly "retaliatory motive" was the "but-for cause" of the adverse action. *Nieves*, 587 U.S. at 398–99 (citation modified). Accordingly, Defendant is entitled to summary judgment. *See Cox*, 654 F.3d at 272.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's summary judgment motion (Dkt. No. 155) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's remaining First Amendment retaliation claim is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk is respectfully directed to serve a copy of this decision and

unpublished caselaw on Plaintiff in accordance with the Local Rules, enter judgment, and close this case.

**IT IS SO ORDERED.**

Dated: August 14, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge